# Morrow *versus* Rees.

1. To sustain an action to recover back purchase-money on the ground of fraud, there must be an actual rescission by the party defrauded, notice of it to the other party and, unless the subject be utterly worthless, an offer to return it, so as to put the vendor *in statu quo.*

2. Evidence for the jury in this case as to rescission.

October 12th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county:* No. 167, to October and November Term 1870.

This was an action of assumpsit, brought March 1st 1867, by James Rees against John Morrow.

The first count of the declaration averred that the defendant represented to the plaintiff that he was the owner in fee, clear of encumbrances, of an undivided eighth part of a tract of land in Morgan county, Ohio, called the Davis & Porter farm, and agreed to sell.to plaintiff in fee simple one-half of the eighth, for which the plaintiff then paid him $1562.50, for which the defendant was bound to deliver to the plaintiff a deed in fee, clear of all encumbrances, and the defendant had failed so to do; the plaintiff further averred that the defendant was not owner of the one-sixteenth of the Davis & Porter farm, clear of encumbrances, but that there was due by the defendant and others, $15,000 for the purchase-money of the whole farm, for the recovery of which proceedings had been instituted in the Court of Common Pleas of Morgan county, a judgment recovered, and the land sold by the sheriff, which divested the title of the defendant and his co-

[Morrow v. Rees.]

tenants, and that the defendant therefore was prevented for ever from making a title to the plaintiff; by reason whereof the plaintiff is entitled to recover back from the defendant the said sum of $1562.50.

The second count was for $1562.50 money had and received, &c.

The case was tried March 17th 1870, before Kirkpatrick, J.

The plaintiff gave in evidence an article of agreement dated February 15th 1865, between Davis & Porter of the one part, and John Morrow (defendant), John Homer, T. W. Fowler and ten others of the other part, by which Davis & Porter agreed to convey the farm mentioned in the declaration in fee to the second party, "or to such of them as comply with the conditions hereinafter mentioned," the consideration to be $25,000, viz., $5000 in hand, the remainder in payments of $5000 each, on the 10th days of April, June, August and October, Davis and Porter to make a deed on the payment of these sums; the property to be held in undivided sixteenths,—Morrow the defendant to have one-sixteenth: "Each shall advance, pay and contribute to said purchase-money his equal share of the same, as required by the terms above specified; and should any or either of them fail to make good their payments at the times above specified, they shall lose and forfeit all interest in said purchase, and also all interest in any payments previously made without recourse, and the interest so forfeited shall accrue and go to those who pay up their respective payments of purchase-money. And we do hereby severally authorize and empower the said Davis & Porter, in case of any such default to be made, to execute and deliver said deed to the parties only who pay up said purchase-money for the entire interest. And we, the said Davis & Porter, hereby appoint and constitute William Burton our agent, to receive the above payments, and his receipt shall be satisfactory evidence of the payment thereof."

The plaintiff then gave in evidence the following papers:—

"Pittsburg, February 15th 1865.

"Received of John Morrow, one thousand five hundred and sixty-two dollars, in full for one-sixteenth of the Davis & Porter farm.          WILLIAM BURTON, for Davis & Porter."

"Pittsburg, February 16th 1865.

"For value received, I assign all the benefits of the within receipt to James Rees, for one-sixteenth of the Davis & Porter farm.          JOHN MORROW."

The plaintiff testified that he paid the plaintiff $806.75 in cash, and $762 by a due-bill, these sums including the purchase-money and some expenses. He said also: "Mr. Morrow called at my office and told me he had one-sixteenth of the Davis & Porter

19 P. F. SMITH—24

[Morrow *v.* Rees.]

farm in Ohio; that he had come into possession of this one-sixteenth by Mr. Fowler being unable to spare the money to pay for it. He wanted me to take it. Told him I did not want it at that time; that I had invested in that kind of stock as much as I could spare for the present. He told me he had purchased that expressly for my use, and paid the cash for it to Mr. Fowler. I asked him to say that upon his word of honor, and I would take it off his hands. I asked him if all of the stockholders had purchased on the same terms, cash, and he allowed that they had, and that I was on the ground floor with the rest of them. He kindly offered to favor me with time on part of it, if I could not spare the money. I accepted that offer, and gave him my due-bill for the balance as above mentioned. He told me I was the owner of one-sixteenth of the whole purchase-money of the farm. After the receipt was given for the purchase-money, he called my attention that there was something to be paid for my share of expenses, and some six or eight dollars were handed to him. Mr. Morrow told me the deed was in the possession of the company, and he would make the representation to the secretary, and have my one-sixteenth properly represented—as to my being an owner of one-sixteenth. He told me who the company were, and I also previously knew it from hearsay."

On cross-examination, he said: " Had a previous conversation with defendant about this same thing. At this conversation previously, I made no complaint to Mr. Morrow, but jocularly remarked to him and Mr. Horner that they had not given me an opportunity to purchase an interest in this farm. Mr. Morrow offered to get me a share, if an opportunity would arise. Told him not to do so, as I did not want any. Morrow told, at the conversation in my shop, that the deed was in the possession of the company. He said this receipt was the same as issued to all the others. * * * The only proof I had of Morrow reporting me as an owner to the company, was a notice, a month or two afterwards, to attend a meeting of the company, which I did."

David Hutchison testified " that $10,000 of the purchase-money had been paid, each one of the purchasers having paid his proportionate share. The defendant declared in the company that he had sold his interest, and did not care whether they paid the balance of the purchase-money or not."

There was other evidence in corroboration of the plaintiff's testimony.

The plaintiff gave in evidence the record of the proceedings in Ohio, under which the land was sold, and rested.

The defendant testified that he paid the whole amount for his share except $190. He purchased Fowler's interest, and gave in evidence an assignment from Fowler to himself, and also a receipt from Davis & Porter for $1562 in full for one-sixteenth

[Morrow *v.* Rees.]

. * * * on account of one share that T. W. Fowler subscribed for on the original purchase."

The defendant gave evidence by several witnesses as well as by his own testimony in contradiction of the evidence of the plaintiff. The plaintiff in rebuttal called D. W. C. Carroll, who testified:

"I have a very faint recollection of something occurring between Rees and Morrow about this matter in Horner's office. We had a general war of words between the parties. It was while these meetings were going on. After considerable talking, we all, as one man, charged Mr. Morrow as not acting right towards the stockholders. Can't remember what was said between Rees and Morrow. The talk was general. To the best of my knowledge, Mr. Rees charged him with a breach of faith in regard to the selling of this one-sixteenth. Mr. Rees understood we were all paying up together, whereas, he was the only one who had paid up. Recollect nothing else. Both were excited, using strong language. There was a general difficulty amongst the stockholders at the time."

A. Becker testified: "Was present; at the last meeting I attended, general dissatisfaction amongst the stockholders. Rees told Mr. Morrow they had known each other for so long, and he had confidence in his word; but that he had falsely represented the payment of the one-sixteenth of the property. Mr. Morrow told him he had his proper receipt. Mr. Rees told him it was worthless, and that he would make him suffer for it. They were angry. All were dissatisfied at that meeting."

The plaintiff testified: "Complained to Morrow, at Horner's office, the first time I heard that this claim was against the property. Asked him for an explanation as to his false representations to me. He said he had paid for the interest in full. Asked him why he had represented the deed in the hands of the company. He made me an indifferent reply, and that brought on angry words. Asked him if he was going to repay me my money. He said he could not do that."

The plaintiff submitted, amongst others, this point, which was affirmed:—

"3. If the jury believe, from the evidence, that at the time the plaintiff paid the defendant for said one-sixteenth interest in the land, the defendant stated and represented to the plaintiff that his co-purchasers had paid up their shares in full, and that the company had procured the deed for the same, and that the defendant purchased on said representation, and that said representation was untrue, that then the plaintiff is entitled to recover back the purchase-money with interest."

The following are points submitted by the defendant with their answers:—

5. In order to rescind the contract, and enable the plaintiff to

recover back his purchase-money, he was bound either to demand a return of his purchase-money, and offer a re-transfer to the defendant of the said one-sixteenth interest in the land, or to give defendant unequivocal notice of his election to rescind the contract; and this he was bound to do promptly after he had discovered all the facts.

Answer: "Affirmed."

7. The declarations made by the plaintiff to the defendant, at the meeting in August 1865, as testified by Carroll, Becker and the plaintiff, did not amount to a rescission of the contract.

Answer: "Refused."

"We leave it to the jury to say what was intended by Rees, and understood by Morrow, by the conversation had between them on this occasion."

8. There is no evidence in the cause of the rescission, or attempted rescission of the contract, until the bringing of this action.

Answer: "Refused, with qualification given to point seven."

9. Upon the whole evidence in the cause, the verdict should be for the defendant.

Answer: "Refused."

The verdict was for the plaintiff for $2044.17.

The defendant took a writ of error.

His 1st specification of error was the answer to his 9th point.

His 4th specification was the answer to the plaintiff's 3d point.

His 5th and 6th specifications were the answers to his 7th and 8th points.

*M. W. Acheson,* for plaintiff in error.—A vendee may buy a *title* at his own risk; and then does not buy the land: Herrod *v.* Blackburn, 6 P. F. Smith 103. The action to recover back money on a rescission of a contract is equitable, and when oath is opposed to oath the writing must prevail: Horton's Appeal, 1 Harris 67; Babcock *v.* Case, 11 P. F. Smith 427. A party to rescind on the ground of fraud must do so at once on the discovery of the fraud: 2 Parsons on Contract 278–279; Kingsley *v.* Wallis, 2 Shepley 57; 1 Sugden on Vendors 266. And must return the thing purchased: Murphy *v.* McVicker, 4 McLean 252; Staines *v.* Shore, 4 Harris 200; Turnpike *v.* Commonwealth, 2 Watts 433; Pearsoll *v.* Chapin, 8 Wright 9; Babcock *v.* Case, *supra.*

*J. Barton,* for defendant in error.

The opinion of the court was delivered, October 23d 1871, by

SHARSWOOD, J.—It will not be necessary to discuss the several specifications of error on this record in detail. It was an action of assumpsit brought to recover back the purchase-money paid for

[Morrow *v.* Rees.]

an interest in a contract for a farm in Ohio, on the ground of fraud. Nothing is certainly better settled in this state than that it is necessary in order to sustain such an action to show an actual rescission by the party defrauded, notice of the rescission to the other party and in general an offer to return the subject, unless indeed it is utterly worthless at the time, so as to put the vendor in *statu quo*: Pearsoll *v.* Chapin, 8 Wright 9; Babcock *v.* Case, 11 P. F. Smith 427; 'Patton *v.* Burkholder, M. D., May 1871. Opinion filed, October 4th 1871 (antea, p. 248). The plaintiff in error complains in his fourth specification, that the learned judge below in affirming the plaintiff's third point—in substance that if the jury believed the alleged fraud the plaintiff could recover— overlooked and in effect denied this well-settled rule. If this point had stood by itself it would undoubtedly have left the instruction to the jury open to this objection. But we must take the affirmance in connection with the answers given by the learned judge to the defendant's fifth and seventh points. By the fifth the defendant requested the court to instruct the jury, "that in order to rescind the contract and enable the plaintiff to recover back his purchase-money, he was bound either to demand a return of his purchase-money and offer a re-transfer to the defendant of the said one-sixteenth interest in the land, or to give defendant unequivocal notice of his election to rescind the contract; and this he was bound to do promptly after he had discovered all the facts." It is unnecessary to inquire whether under the circumstances of this case, a rescission did not *ipso facto* revest the interest in the defendant without any re-transfer or return of the receipt. The learned judge without qualification affirmed the defendant's point, and it surely cannot lie in his mouth to object or to allege that inasmuch as it was in' the alternative it was inaccurate and that the judge should have gone further than he was requested. The answer to the plaintiff's third point was therefore qualified by the answer to the defendant's fifth point, and both being taken together there was no error of which the defendant had any right to complain. The law was given to the jury just as he requested it to be. By the seventh point of the defendant the court were asked to charge "that the declarations made by the plaintiff to the defendant at the meeting in August 1865, as testified by Carroll, Becker and the plaintiff, did not amount to a rescission of the contract." , This the court refused, but left it to the jury to determine. So that the only question fairly presented upon this record is whether the declarations here referred to did amount to sufficient evidence of a rescission to be submitted to the jury. Rees, the plaintiff, testified distinctly that in that conversation he asked Morrow, the defendant, if he was going to repay him his money. Morrow said he could not do that. Now this was certainly evidence of rescission. What could be

[Morrow *v.* Rees.]

more unequivocal than a distinct demand for the return of the purchase-money? Though neither of the other two witnesses testify with the same distinctness to this demand, yet there is nothing in their testimony which absolutely contradicts it, and if there was it would not be any the less a question for the jury. They both agree that the parties were excited and that strong language was used. Carroll says that Rees charged Morrow with a breach of faith, and Becker says that when Morrow told Rees that he had his proper receipt, Rees replied that it was worthless and that he would make him suffer for it. The question then was fairly and properly submitted to the jury.

The second and third assignments of error have not been pressed, as indeed they could not be with any show of reason, and the remaining ones are disposed of by the considerations which have been presented.

Judgment affirmed.